**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

IN RE:

**CRAIG FRANCIS CAMPBELL**                                                                **CASE NO. 10-22561**

**DEBTOR**

## MEMORANDUM OPINION AND ORDER

These matters are before the Court on the Debtor's Motion for Order Avoiding Lien on Exempt Property ("Lien Avoidance Motion") [Doc. 70], Debtor's Motion for Contempt and Sanctions against Park National Bank (the "Bank") (the "Contempt Motion") [Doc. 72], and the Bank's Objections thereto [Docs. 78, 79]. The Debtor, Craig Francis Campbell, moved to hold the Bank in contempt for violation of the discharge injunction pursuant to 11 U.S.C. § 524(a)(2) based on the Bank's post-petition actions in the Kenton Circuit Court, including asserting a lien and pursuing a constructive trust on property titled to his father and seeking punitive damages against the Debtor.

The Court held an evidentiary hearing on November 21, 2013. The parties filed extensive joint stipulations of fact and proffered exhibits which were admitted into evidence without objection. The Debtor offered no additional testimony in support of the Motion. The Bank offered the testimony of Attorney J. Michael Debbeler who testified as an expert qualified in the areas of real estate and bankruptcy law without opposition from the Debtor. Daniel Turben, Vice President of the Bank, testified that the Bank did not intend to sue on the Debtor's personal liability. Both Attorney Debbeler and Mr. Turben were subject to cross-examination by the Debtor. At the conclusion of the hearing, the Court took these matters under submission. Upon consideration of the evidence, the Court makes the following findings of fact and conclusions of law.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the reference of bankruptcy cases from the United States District Court for the Eastern District of Kentucky pursuant to Local Rule 83.12. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper pursuant to 28 U.S.C. § 1409.

<u>The Debtor's Debt to the Bank and the 2006 Foreclosure Action</u>. In October 2004, the Bank loaned the Debtor and his wife $435,000 to purchase real property located at 111-115 Park Place, Covington, Kenton County, Kentucky (the "Park Place Property"). The loan was secured by a recorded mortgage and an assignment of rents on that property. At some point in time, the Debtor and his former spouse negotiated a Real Estate Purchase Agreement for the sale of the Park Place Property to Covington Square LLC, for which Debtor received a check payable to him and his wife in the amount of $150,000 (the "Down Payment") on June 6, 2006. For reasons not in evidence, the private sale of the Park Place Property did not occur. The disposition of the Down Payment is discussed below.

In 2006, William Clark, d/b/a BC Electric initiated foreclosure proceedings against the Debtor and his now former spouse in the Kenton Circuit Court, Case No. 06-CI-1255 (the "2006 Action"). The Bank was named as a Defendant and asserted its mortgage interest in the Park Place Property. The property was sold at foreclosure. The Bank was not paid in full. On August 27, 2007, the Bank filed its Notice of Judgment Lien in the Kenton County records for the deficiency balance of $264,755.76 plus interest.

<u>The Lakeside Park Property</u>. In the meantime, on or about June 12, 2006, James Lee Campbell, the Debtor's father ("James"), took record title to real property located at 2641 Dixie Highway, Crestview Hills, Kenton County, Kentucky (the "Lakeside Park Property"). James was the record title holder of the Lakeside Park Property from June 12, 2006 until May 19, 2008, when he transferred the property to the James Lee Campbell Revocable Trust ("Trust"). The parties do not dispute that the Down Payment was used to acquire the Lakeside Park Property, but disagree as to how this came about. The Debtor states that the Down Payment was paid to James on a

2

debt he owed James and that James then purchased the Lakeside Park Property. The Bank states that the Debtor purchased the Lakeside Park Property himself, but caused it to be put in his father's name to shield the property from his creditors. As explained below, it is unnecessary to determine this in the context of the Contempt Motion. The Lakeside Park Property has a current tax assessed value of $260,000.

The Debtor's Bankruptcy. On September 22, 2010, the Debtor filed the within chapter 7 proceeding. His petition and schedules list no real estate and make no mention of the disposition of the Down Payment in 2006. The Bank was listed as an unsecured creditor on Debtor's Schedule F, having already foreclosed on its mortgage on the Park Place Property. James was also listed as an unsecured creditor on Schedule F as being owed a debt of "unknown." On November 8, 2010, the Debtor filed a Notice of Bankruptcy in the state court 2006 Action which was served on counsel for the Bank. The Debtor's discharge was entered on March 8, 2011, and the case was closed two months later on May 11, 2011. The Bank took no action in the bankruptcy to either except its debt from the Debtor's discharge or to oppose the Debtor's discharge generally. 11 U.S.C. §§ 523, 727. The chapter 7 trustee took no action to claim the Lakeside Park Property as property of the estate under any theory. Nor did the trustee take action against James or the Trust to avoid any alleged fraudulent transfer of the Lakeside Park Property. 11 U.S.C. §§ 548, 544; KY. REV. STAT. §§ 378.010, 378.020.

The 2011 Action. On February 28, 2011, the City of Lakeside Park filed an action for unpaid property taxes attributable to the Lakeside Park Property against the James Lee Campbell Revocable Trust, *et al.* in the Kenton Circuit Court (the "2011 Action"). The Bank, named as a defendant, filed an "Answer and Cross-claim" on May 11, 2011.[1] The Bank's Cross-claim against the Trust alleged that the Bank's judgment lien constituted a first and superior lien (subject only to ad valorem taxes):

[A]gainst any interest which Craig Campbell and/or Josette Campbell, may claim

---

[1] The complaint is not in the record and the basis for the inclusion of the Bank as a defendant is unclear.

>or be entitled to in the [Lakeside Park Property]…. Park National Bank hereby asserts its lien claim against the property described in the Complaint to the extent that either Craig Campbell or Josette Campbell have an interest at law or in equity in such property whether as settlers or beneficiaries of the James Lee Campbell Revocable Living Trust or otherwise.

[Doc. 99, Debtor's Ex. H Cross-claim ¶ 3-4]. Thereafter, the following ensued in the 2011 Action:

1. On November 4, 2011, the Bank moved for Default Judgment "in rem" to enforce its judgment lien against the Lakeside Park Property based on the Trust's failure to file an answer or other responsive pleading to the Bank's Cross-claim.

2. On March 30, 2012, the Trust filed an Answer to the Bank's Cross-claim asserting that it was the owner of the Lakeside Park Property and that the Debtor had "no past, present or future interest in the [Lakeside Park Property]." [Doc. 95, Debtor's Ex. J ¶ 6]. The Answer further pled and provided notice to the Bank of the Debtor's bankruptcy and discharge.[2]

3. On April 23, 2012, the Trust moved the state court to enter summary judgment dismissing the Bank's claims against the Trust alleging that the Debtor had no interest in the Lakeside Park Property and only a mere expectancy in the Trust, provided he remained the named beneficiary.[3] The motion further provided notice to the Bank of the Debtor's bankruptcy and discharge.

4. The Bank responded in opposition to the summary judgment motion noting that it had "pending before the Court a Motion to Amend its Cross-Claim to name as additional cross-claim defendants, Craig Campbell, James Lee Campbell and Campbell Property Management, Inc." [Doc. 117, Bank's Ex. 4, pt. 2 ¶ I]. The response further noted that the Bank had just propounded discovery requests to the Trust and that the "discovery requests have just been made upon the Trust due to the fact that the Trust was in default and judgment had been rendered against it and

---

[2] The parties further stipulated that on October 26, 2011, the Debtor filed a Motion to Enforce Bankruptcy and to Dismiss Pending Claims and Liens in the 2006 Action, including serving said Motion on Counsel for the Bank. That pleading, however; appears to request action against a different party, "Lantrust."

[3] The parties further stipulated that at the time the 2011 Action was filed, the Debtor was the beneficiary of the Trust, but that by April 2012, the Debtor was no longer a beneficiary. The relevance of this eludes the Court.

4

only recently the Trust was able to have the Court set aside the Default Judgment it had granted to Park National against the Trust…." [Doc. 117, Bank's Ex. 4, pt. 2 ¶ I].

5. On May 29, 2012, the state court denied the Motion for Summary Judgment "as premature without prejudice to refilling [sic] after the completion of discovery" and granted the Bank's Motion to File the Amended Cross-claim. [Doc. 96, Debtor's Ex. L].

6. The Bank's Amended Cross-claim named three "New Cross-claim Defendants": the Debtor, James and Campbell Property Management, Inc. The Bank's Amended Cross-claim asserted five causes of action and requested the following relief:

> WHEREFORE, Park National demands as follows:
>
> a. That its secured interest in the Lakeside Park Property to the extent that rights and proceeds from the Park Place Property were used to acquire the Lakeside Park Property be recognized and that Park National be given the right to enforce such interest by having the Lakeside Park Property sold by the Master Commissioner to satisfy the outstanding judgment owed to Park National;
>
> b. That its Judgment Lien be held to attach to the Lakeside Park property and that the Master Commissioner be ordered to sell the Lakeside Park Property to satisfy the outstanding balance owed to Park National;
>
> c. For an Order finding Craig Campbell to be the sole owner of the Lakeside Park Property;
>
> d. For punitive damages against the Campbell Trust, Craig Campbell, James Lee Campbell and Campbell Property Management, Inc. for its fraudulent conduct in attempting to conceal the interest of Craig Campbell in the Lakeside Park Property and preventing Park National from exercising its legal rights;
>
> e. For the imposition of a constructive trust on the Lakeside Park Property;
>
> f. For its costs herein expended including a reasonable attorney fee;
>
> g. For all other relief to which it may appear entitled.

[Doc. 96, Debtor's Ex. M]. The Trust raised no objection to the Bank amending its Cross-claim to add Debtor as a party defendant to assert a claim against his *in rem* interest in the Lakeside Park Property, and its answer does not raise any defense based on the bankruptcy discharge.

7. The New Cross-claim Defendants filed an answer to the Amended Cross-claim generally denying the Bank's allegations.

    8. After its Amended Cross-claim was filed, the Bank served discovery requests upon the Debtor seeking to establish the Debtor's interest in the Lakeside Park Property, and the following ensued:

    a. By letter dated April 11, 2013, counsel for the Bank sought to subpoena records from Debtor's former bankruptcy counsel. The letter also advised that the Bank had filed a cross claim against the Debtor's interest in the Lakeside Park Property.

    b. On April 13, 2013, the Bank propounded discovery upon the Debtor, included but not limited to, Request for Admissions and Request for Production of Documents seeking to establish the Debtor's interest in the Lakeside Park Property.

    c. On or about June 5, 2013, the Bank filed a motion to compel discovery responses from the Debtor.

    d. By order dated June 24, 2013, the Kenton Circuit Court ordered the Debtor to respond to the Request for Admissions and Production of Documents, as well as to sit for a new Court ordered deposition. In addition, the Order sanctioned the Debtor to pay $250.00 to the Bank's counsel.

    e. On July 9, 2013 the Bank moved the state court to enter a "default judgment in rem" based on the Debtor's and James' continued failure to respond to discovery or appear for depositions seeking an order directing the sale of the Lakeside Place Property by the Master Commissioner. Daniel Turben, Vice President of the Bank, filed an affidavit of account status in support of the Motion.

The bankruptcy case was reopened two weeks later and the Debtor filed the Lien Avoidance and Contempt Motions.

<u>The Contempt Motion</u>. The Debtor contends that the Bank's actions in the 2011 Action violate the Debtor's discharge, and thus, the Bank should be held in contempt. Section 524(a)(2) provides:

    (a) A discharge in a case under this title—

> . . . .
>
> (2)  operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2). A violation of the discharge injunction exposes a creditor to potential contempt of court. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-23 (6th Cir. 2000). To impose contempt sanctions on an alleged violator of the discharge injunction, the Court must conclude that the creditor's conduct violated the discharge injunction and was contemptuous.

<u>Scope of the Discharge Injunction</u>. As the Supreme Court has ruled, it is only the personal liability of the debtor that is extinguished by the discharge, *in rem* actions remain intact. *Johnson v. Home State Bank*, 501 U.S. 78, 111 S. Ct. 2150, 2151, 115 L. Ed. 2d 66 (1991). Section 524(a)(2)'s prohibition bars only actions seeking to recover a debt from the debtor. As one jurist notes:

> [I]t is well settled the permanent discharge injunction contained in 11 U.S.C. § 524(a)(2) does not prevent suit against the debtor (e.g., Ms. Rodgers) solely to determine liability in order to collect from the debtor's (or another entity's) insurer. Thus, it is permissible to commence or continue prosecution against a debtor as a nominal defendant if such action is necessary to prove liability as a prerequisite to recovery, for example, from the liability insurer. Indeed, many state laws require that the debtor be a named party. It is emphasized, however, that no collection action may be taken against the debtor.

*Simpson v. Rodgers (In re Rodgers)*, 266 B.R. 834, 836-37 (Bankr. W.D. Tenn. 2001) (citations omitted); *accord Tucker v. Nickelson (In re Nickelson),* No. 02-54916 RFH, 2003 WL 1790857 (Bankr. M.D. Ga. 2003); *In re Christian*, 180 B.R. 548, 549 (Bank. E.D. Mo. 1995); *see also Yelverton v. Ludwig & Robinson, PLLC (In re Yelverton)*, No. 09-00414, Adv. No. 12-10018, 2012 WL 4905948, *4 (Bankr. D.C. 2012) (the discharge injunction does not bar a creditor from alleging misconduct on the Debtor's part in order to state a claim against non-debtor entities). Thus, merely naming a debtor as a defendant in a lawsuit, without more, does not violate the discharge injunction.

Section 524(e) provides:

> (e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C. § 524(e).

Consistent with this law, the Bank alleges that its actions in the 2011 Action were actions *in rem.* "*In rem*" is a term "used to designate proceedings or actions instituted *against the thing*, in contradistinction to personal actions, which are said to be '*in personam*'" actions. *Stephens v. Jensen-Carter (In re Stephens)*, 276 B.R. 610, 614 (B.A.P. 8th Cir. 2002) *aff'd* 53 F. App'x 392 (8th Cir. 2002) (alterations in original) (citations omitted). The Bank contends its actions sought recovery only from the Lakeside Park Property. The Debtor counters that pursuant to Kentucky law a constructive trust is an action *in personam* and further contends that the Bank's pursuit of punitive damages against the Debtor violates the Debtor's discharge.

In the 2011 Action, neither the Bank's actions asserting that its judicial lien attached to the Lakeside Park Property as a result of the Debtor's conduct nor its pursuit of a constructive trust against that property, violate the discharge injunction. The Lakeside Park Property was titled first to James, then the Trust, both non-debtors. The bankruptcy case closed without any action being taken to deem the property part of the Debtor's estate or to avoid any fraudulent transfer. The Debtor cannot have it both ways—he cannot claim he doesn't own the property and simultaneously complain of the Bank's actions to pursue a lien on that property.

Moreover, although a constructive trust claim is an *in personam* action under Kentucky law, this does not support the Debtor's contempt contention where the constructive trust claim is made against a non-debtor and his property and seeks no recovery from the Debtor. These facts are clearly inapposite to the facts presented by *XL/Datacomp, Inc. v. Wilson (In re Omegas Grp., Inc.)*, 16 F.3d 1443 (6th Cir. 1994) wherein a creditor claimed that property of the estate should be subject to a constructive trust based on the debtor's conduct.

Moreover, there was nothing impermissible about the Bank seeking discovery from the Debtor in support of its claims against the non-debtors so long as the discovery was not directed

8

to leverage recovery from the Debtor on the discharged claim. *In re Paul*, 534 F.3d 1303, 1307-1308 (10th Cir. 2008). There is no evidence that the discovery was for a prohibited purpose and this Court will not oversee the conduct of litigation in other courts. *Id.*

However, the Bank did more than pursue non-debtors and property titled to non-debtors. Its Amended Cross-claim named the Debtor as a party defendant, not merely in a nominal capacity to assert conduct relating to its lien/constructive trust claims, but to assert a claim to recover punitive damages against the Debtor based on his alleged prepetition conduct. That this claim is asserted in an otherwise *in rem* action, does not insulate the Bank. There is no scenario under which the Bank can legitimately contend that it did not seek to recover punitive damages from the Debtor based on the Debtor's prepetition conduct.

<u>Was the conduct contemptuous</u>? As noted above, the Court must also determine whether the acts which violated the discharge were contemptuous. In the context of a violation of the discharge injunction, this means that the act must have been willful. *See Gunter v. Kevin O'Brien & Assocs., LPA (In re Gunter)*, 389 B.R. 67, 75 (Bankr. S.D. Ohio 2008) ("In light of the Sixth Circuit's holding in *Pertuso*, this court cannot award damages for violations of the discharge injunction that are technical or inadvertent and do not rise to the level of contempt."); *Kanipe v. First Tenn. Bank (In re Kanipe)*, 293 B.R. 750, 756 (Bankr. E.D. Tenn. 2002) (denying sanctions because, "although a violation of the discharge injunction occurred, the violation was not willful and therefore not contemptuous."). The question of whether the violation is willful is based on whether the creditor intended the acts that constitute the violation. The standard does not require proof that the creditor deliberately violated the injunction. *In re Waldo*, 417 B.R. 854, 891 (Bankr. E.D. Tenn. 2009). Thus, a debtor who alleges a violation of § 524(a)(2) must establish by clear and convincing evidence that the creditor: (1) violated the discharge injunction and (2) did so with actual knowledge of the injunction. *In re Gunter*, 389 B.R. at 72 (citing *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006)).

The Debtor has met his burden to show by clear and convincing evidence that the Bank

willfully violated the discharge injunction.   There is no dispute that the Bank had knowledge of the entry of the Debtor's Order of Discharge.   Attorney Debbeler testified that based on his review of the 2011 Action and the bankruptcy filings, it was his opinion that the Bank's Cross-claim was limited to seeking *in rem* relief against the Lakeside Park Property; and thus, the Bank did not violate the discharge injunction.   The Court disagrees.[4]   Notwithstanding the *in rem* aspects of its Amended Cross-Claim, the Bank violated the injunction by seeking to hold the Debtor personally liable for punitive damages based on his alleged pre-bankruptcy conduct, a claim that did not survive the Debtor's discharge.   The Bank's Amended Cross-claim states: "The actions of the Campbell Trust, Craig Campbell, James Lee Campbell and Campbell Property Management, Inc. were done with the intent to defraud Park National entitling Park National to punitive damages."   [Doc. 96, Debtor's Ex. M ¶ 27].   The Court agrees with Mr. Turben's testimony that the statement speaks for itself.   The Bank is in contempt of the Debtor's discharge order.

However, as noted above, the Debtor has attempted to use his discharge to shield his father and property titled to his father.   He failed to raise his discharge as a defense in the state court as authorized by KY. R. CIV. P. 8.03 (affirmative defenses include discharge in bankruptcy) in order that these issues could be adjudicated by the state court.   The Debtor violated discovery orders and was himself properly sanctioned by the state court.   The Court will defer ruling on any sanctions for the violation pending further filings as provided hereafter.

<u>The Lien Avoidance Motion</u>.   The Debtor further requests that the Bank's judicial lien be avoided because he didn't own any real estate at the petition date, and the presence of the lien is impairing his discharge and may improperly encumber any future interest in real estate which the Debtor may acquire.   This Court has previously ruled that a creditor should voluntarily release a judgment lien that was not attached to real property at the petition date.   *In re Blakely*, No.

---

[4] Ordinarily, the testimony of an expert witness will not be admitted when only a question of law is at issue. *See Sagamore Park Ctr Assocs. Ltd. P'ship v. Sagamore Park Props.*, 200 B.R. 332 (N.D. Ind. 1996). Because there was no objection to Attorney Debbeler serving as an expert witness, the Court allowed the testimony; however, the Court will not substitute Attorney Debbeler's opinion for the Court's on questions of law.

13-50069, slip op. at 2 (Bankr. E.D. Ky. Mar. 27, 2013).   At the petition date, the Debtor did not hold record title to any real property to which the Bank's judgment lien attached; however, as noted above, the Bank contends the lien attaches to the Lakeside Park Property under a variety of theories.  The Court makes no ruling as to the effect of the Bank's judicial lien on the Lakeside Park Property, leaving that matter for adjudication by the state court; however, the lien will not attach to any additional real property which the Debtor acquires.   Based on the foregoing,

      IT IS HEREBY ORDERED that the Contempt Motion [Doc. 72] is GRANTED and Debtor shall file his Affidavit of Damages and Request for Sanctions within 21 days.   The Bank may file any reply 14 days thereafter.

      IT IS FURTHER ORDERED that the Lien Avoidance Motion [Doc. 70] is GRANTED in part as to any property to which the Debtor acquires post-petition subject to any ruling by the Kenton Circuit Court in the 2011 Action regarding the extent of the Bank's lien on the Lakeside Park Property.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
***The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.***



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Monday, January 06, 2014**
**(tnw)**